IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FISHMAN ORGANIZATION, INC.,          :     CIVIL ACTION
                                     :     NO. 11-4598
          Plaintiff,                 :
                                     :
     v.                              :
                                     :
FRICK TRANSFER, INC.,                :
                                     :
          Defendant.                 :



M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JULY 24, 2012


        The Fishman Organization ("Plaintiff") brings this

diversity action against Frick Transfer ("Defendant") to recover

damages caused by the breach of a bailment contract between the

parties. Plaintiff moves for summary judgment on the issue of

liability. For the reasons that follow, the Court will grant in

part and deny in part the Motion for Summary Judgment on

Liability.


I.   **BACKGROUND**[1]

        Defendant operates a moving, storage, and warehouse

business in Easton, Pennsylvania. Compl. ¶ 6, ECF No. 1; Answer

---

[1]        The Court views the following facts in the light most
favorable to Defendant and draws all reasonable inferences in
Defendant's favor.

¶ 6, ECF No. 5. Since 1995, Plaintiff, a New York corporation, stored certain goods in Defendant's facilities. Compl. ¶ 1; Jerry Fishman Dep. 9:21-22, Dec. 6, 2011.

On January 1, 2002, Plaintiff entered into an agreement whereby Defendant would store Plaintiff's goods at Defendant's Wilson Park Distribution Center ("Wilson Park"). Warehouse/Distribution Services Agreement (Wilson Park) ¶ 2 (Jan. 1, 2001) [hereinafter Wilson Park Agreement]. The initial term of the agreement commenced on January 1, 2002, and ended on December 31, 2002. Id. ¶ 1. After December 31, 2002, the agreement extended on a month-to-month basis "until either party provides to the other a thirty (30) day written notice of its intention to terminate [the agreement]." Id. The parties assigned the risk of loss to Plaintiff as follows:

> Fishman shall assume the risk of loss or damage to its goods stored on the premises, and agrees to indemnify and hold Frick and Wilson Park Ltd. and their respective agents, officers, directors, employees and partners, harmless from any loss or expense, other than risk of loss or damage to Goods caused by Frick's negligence and limited to the extent of Frick's insurance.

Id. ¶ 5.

On July 29, 2004, Plaintiff purchased 240 cartons of Acqua di Gio Man EDT Spray 100 ml ("the Product") from a distributor in Barcelona, Spain, at a cost of $164,045.42. See

Mot. Summ. J. Ex. B, ECF No. 15. Plaintiff stored the Product at Wilson Park. See id.

On June 2, 2006, Defendant notified its warehouse customers by letter that they must remove items stored at Wilson Park, because the warehouse would be renovated for use as a condominium. Mot. Summ. J. Ex. C. Frick Transfer President Paul S. Robison testified that the letter terminated Defendant's warehouse storage arrangements with its customers. Robison Dep. 37:6-16, Dec. 6, 2011.

On September 5, 2006, Defendant notified its warehouse customers by letter that Defendant would operate a new warehouse facility on Tatamy Road in Easton, Pennsylvania ("Tatamy Warehouse"). Mot. Summ. J. Ex. D. Defendant explained that its joint venture with WilsonPark, whereby Defendant provided labor and WilsonPark provided storage space, was dissolved and Defendant would now handle all operations at the Tatamy Warehouse. Id. Defendant invited its customers to contact it to relocate their items to its new facility and reminded them that they otherwise must remove any items at Wilson Park by September 29, 2006. Id.

On September 7, 2006, in response to Plaintiff's interest in storage at the Tatamy Warehouse, Defendant sent a

proposal to Plaintiff.[2] Mot. Summ. J. Ex. E. In September 2006, Defendant moved Plaintiff's inventory from Wilson Park to the Tatamy Warehouse. Answer ¶ 14.

On May 27, 2010, Wayne Frick, Defendant's employee, received a telephone call from Steven Lewandowski, the brother of an employee, Daniel Lewandowski. Frick Dep. 17:23-18:6; 23:4. Steven explained that Daniel stole perfume from pallets in the warehouse and was selling the perfume. Id. at 19:7-19. Frick spoke with Robison, who directed Frick to check Plaintiff's storage room. Id. at 20:5-6. When Frick arrived at Plaintiff's storage room, the gate was shut, there was a chain around the gate, and the lock was on. Id. at 21:2-3. He unlocked the gate and inspected the room. Id. at 21:3-4. Frick noticed two empty pallets in the room but did not notice anything out of the ordinary. Id. at 21:3-23. Defendant did not report the alleged theft to Plaintiff or the police. Id. at 23:12-17.

---

[2]     The proposal provided, in part:

> Following your interest in a room in our new facility, we would like to offer you this proposal for the room you chose. We will pull the heaters currently installed at the Dixie Cup building [Wilson Park] and install them in that room. We will install locks on all man doors and install a wall in place of the door on the east side of that room. A fence will be installed with a lockable door large enough for a forklift on the south west corner to allow an access for a forklift to the room adjacent to the west side of your room without entering your secure area.

Mot. Summ. J. Ex. E.

On September 22, 2010, Diane Fishman, an officer and employee of Plaintiff, arranged with Defendant to access Plaintiff's storage area the following day.[3] Compl. ¶ 16; Answer ¶ 16. On September 23, 2010, Diane Fishman discovered that some of the Product was missing and reported the incident to Frick. Frick Dep. 23:4-9. At that point, Frick informed Diane Fishman that he received a report that an employee stole some of the Product. Id. at 23:18-24:3.

On June 9, 2011, Daniel Lewandowski pled guilty to receiving stolen property in the Pennsylvania Court of Common Pleas of Northampton County pursuant to a negotiated plea agreement. Answer ¶ 19; Lewandowski Dep. 36:7-19. Lewandowski testified at his deposition relating to this civil action that from June 2008 to September 2009 he removed cases of the Product until none was left. Id. at 22:7-31:8. In each instance, Lewandowski testified that, although a lock was in place on the door to Plaintiff's storage area, the gate was actually unlocked, which allowed him to walk through the front gate to access Plaintiff's storage area. Id. at 17:19-18:2; 25:12-26:4; 29:14-16. Lewandowski further testified that because of problems

---

[3]         At Wilson Park, Defendant and its employees could not access Plaintiff's storage space. Compl. ¶ 13; Answer ¶ 13. At the Tatamy Warehouse, however, Defendant controlled access to Plaintiff's storage area, and Plaintiff's agents could not access the area without an employee of Defendant. See Jerry Fishman Dep. 31:9-23.

with the alarm system, Defendant's agents sometimes turned off the alarm for the day, which sometimes "rolled into weeks where the alarms were not set." Id. at 33:7-8.

## II.  PROCEDURAL HISTORY

On July 21, 2011, Plaintiff filed a Complaint against Defendant that asserts claims of breach of a bailment contract (Count I), negligent hiring, supervision, and retention (Count II), and negligent notification (Count III). Defendant answered and asserted a single counterclaim for breach of contract based on Plaintiff's failure to pay rent.[4]

On March 22, 2012, Plaintiff moved for summary judgment on the issue of liability. Defendant responded, and Plaintiff replied. The matter is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere

---

[4]      Plaintiff answered the counterclaim and argues that the parties agreed that Defendant would excuse rent for the lease of storage space until the issue of the theft of Plaintiff's goods was resolved. In any event, neither party moves for summary judgment with respect to Defendant's counterclaim.

existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Federal courts sitting in diversity generally apply substantive state law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Here, the parties rely on Pennsylvania law in their written submissions to the Court, which indicates their agreement that Pennsylvania law governs the interpretation of

7

the instant bailment contract. Therefore, the Court will apply Pennsylvania law in this case. <u>See</u> <u>Advanced Med., Inc. v. Arden Med. Sys., Inc.</u>, 955 F.2d 188, 202 n.8 (3d Cir. 1992).

## IV.  DISCUSSION

Under Pennsylvania law, "[a] bailment is a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it." <u>Price v. Brown</u>, 680 A.2d 1149, 1151 (Pa. 1996). A contract of bailment may be implied when "the natural and just interpretation of the acts of the parties warrants such a conclusion." <u>Lear Inc. v. Eddy</u>, 749 A.2d 971, 973 (Pa. Super. Ct. 2000) (internal quotation marks omitted). Here, Plaintiff delivered the Product to Defendant for the purpose of storing the Product at Defendant's Wilson Park location. Plaintiff then directed Defendant to move the Product to the Tatamy Warehouse, where Defendant would continue to store the Product under lock and key. The natural and just interpretation of the parties' conduct warrants the conclusion that the parties created a contract of bailment. <u>See</u> <u>id.</u>

Actions arising under common law bailment in Pennsylvania proceed under a burden-shifting framework. The

bailor must first establish a prima facie case by showing "that personalty has been delivered to the bailee, a demand for return of the bailed goods has been made, and the bailee has failed to return the personalty." Price, 680 A.2d at 1152. Upon such a showing, the burden shifts to the bailee to provide evidence that accounts for the loss. Id. If the bailee fails to account for the loss, then the law presumes the bailee failed to exercise the duty of care required by the bailment agreement. Id. However, if the bailee can "show[] that the personalty was lost and the manner in which it was lost, and the evidence does not disclose a lack of due care on [the bailee's] part, then the burden of proof again shifts to the bailor who must prove negligence on the part of the bailee." Id. Thus, although the bailment relationship originates in the law of contract, liability is premised on the tort concept of negligence, and the bailee "will be held liable for loss of or damage to the bailed property only upon proof of a departure from the appropriate standard of care." Am. Enka Co. v. Wicaco Mach. Corp., 686 F.2d 1050, 1053 (3d Cir. 1982) (citing Light v. Miller, 38 Pa. Super. 408, 414 (1909)).

The standard of care imposed on the bailee depends on the type of bailment at issue. The Pennsylvania General Assembly prescribed the duty of care by which a warehouse is liable for the loss of goods as follows:

> A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. Unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care.

13 Pa. Cons. Stat. Ann. § 7204(a) (West 2012); see also Penn City Invs., Inc. v. Soltech, Inc., No. 01-5542, 2003 WL 22844210, at *8 (E.D. Pa. Nov. 25, 2003) (recognizing that § 7204 sets the standard of care in common law bailment action). Whether a bailee failed to exercise the requisite standard of care is generally a question for the fact-finder. See Leprino Foods Co. v. Gress Poultry, Inc., 379 F. Supp. 2d 659, 670 (M.D. Pa. 2005) ("What constitutes ordinary care or diligence varies with the circumstances under which the bailment is made, the nature of the subject matter, the business in which the bailee is engaged, and the usages of that particular industry, and is necessarily a question for the jury.").

A bailee breaches its duty of care when an agent of the bailee steals the goods under bailment, even where the agent acts for his own purpose and outside of the scope of his employment. See Metzger v. Downtown Garage Corp., 82 A.2d 507, 508 (Pa. Super. Ct. 1951). In Metzger, the plaintiff placed his vehicle in the defendant's parking lot after paying a parking fee and receiving a receipt. The defendant's employee, who was in charge of the parking lot, without the plaintiff's consent,

drove the car off the lot and was involved in a collision while joy-riding in the City of Philadelphia. The court affirmed the trial court's entry of judgment for the plaintiff and held, "Where a bailor delivers his car to a bailee and pays the required consideration, and later seeks to regain his car, the bailee should not be permitted to escape liability simply by the pious statement that he is sorry (but not liable) because his servant stole the car." Id. at 508; see also Jackson v. Fort Pitt Hotel, Inc., 57 A.2d 696, 697 (Pa. Super. Ct. 1948) ("The bailee cannot receive money for the performance of a duty, and at the same time shift the responsibility to a servant, and thus be relieved from liability for the violation of the very duties attending the bailment."); 8A Am. Jur. 2d Bailments § 127 (2012) ("[T]he doctrine of respondeat superior cannot be invoked to relieve a bailee of liability for breach of a contractual duty the bailee has undertaken to perform through an agent or employee. In such a case, the bailee is liable to the bailor even though the employee or agent was acting for his or her own purposes, without authority or contrary to instructions, outside the scope of the employment.").

Here, Defendant breached its duty of care to Plaintiff because its agent, Daniel Lewandowski, stole the Product. Just as the parking lot owner was liable for damages caused by its employee's theft of the car in Metzger, Defendant, here, is

liable for damages caused by Lewandowski's theft of several cases of the Product. The parties do not dispute that Lewandowski stole cases of the Product for his own purposes and outside of the scope of his employment.[5] Nor do the facts indicate that the Product was lost for any reason but for Lewandowski's actions. Disturbingly, for nearly four months, Defendant failed to notify Plaintiff that it received a tip that an employee stole some of the Product, and Defendant finally revealed the tip to Plaintiff and the police only after Plaintiff's agent informed Defendant that some of the Product was missing. Finally, Defendant makes no attempt to distinguish Metzger from the facts of this case. No reasonable jury could find that Defendant did not breach its duty of care to Plaintiff when Lewandowski, Defendant's agent, stole the Product. Plaintiff, therefore, is entitled to judgment as a matter of law. See Metzger, 82 A.2d at 508.

　　　　Defendant argues that a genuine dispute of material fact exists whether Defendant exercised reasonable care by providing a gated and locked storage location for the Product. In support of its argument, Defendant notes that Palmer Township Police Department Detective James Taylor testified that, after conducting an investigation of Plaintiff's storage area, he

---

[5]　　　　Defendant, however, disputes the amount and value of the Product lost. See Def.'s Resp. 5, ECF No. 16.

believed that Lewandowski accessed the area either by obtaining

a key to the storage area or by removing the Product one box at

a time over a small opening between the fence and the ceiling of

the storage area.[6] Taylor Dep. 30:18-31:7, Jan. 27, 2012.

Defendant points to Jerry Fishman's testimony that "the building

was sprinklered, was secured, doors locked. The only access and

only key we were assured of sat with Paul [Robison] in the

office. The key was locked up and nobody had access to our

area." Jerry Fishman Dep. 32:17-20. Finally, Defendant points to

Robison's testimony that Lewandowski was a mover who did not

work in the warehouse and that Defendant never received a

complaint that items were missing in connection to the jobs he

performed. Robison Dep. 48:14-19.

  The factual disputes that Defendant raises are not

material to whether Defendant is liable under the bailment

contract for its agent's theft. Defendant points to evidence

that suggests it took measures to ensure the Product was secure

and that it lacked notice that one of its employees stole items

from its clients. Perhaps this evidence would be material if an

individual not employed by Defendant stole the Product. In such

a case, Plaintiff would have the burden of showing the theft

---

[6]  Of course, Detective Taylor's belief contradicts
Lewandowski's testimony that, in fact, he accessed the storage
area by walking through the gate because the lock was not
engaged.

would not have occurred but for Defendant's negligence, and evidence of measures Defendant took to ensure the Product was secure would be material. See Am. Equitable Assurance Co. of N.Y. v. Mussoline, 191 A.2d 862, 864 (Pa. Super. Ct. 1963); see also 8A Am. Jur. 2d Bailments § 118 (2012) ("A bailee is not liable, in the absence of a breach of the bailment contract or negligence, for loss or injury to the bailed property resulting from . . . theft."). But such is not the case here. Rather, an agent of Defendant stole the Product, a fact not in dispute. Pennsylvania law is clear that the doctrine of respondeat superior does not shield a bailee from liability when its agent steals the bailment. And even though Lewandowski acted outside of the scope of his employment and for his own purpose, Defendant is liable for the loss of the Product caused by its agent's theft. See Metzger, 82 A.2d at 508.

Defendant next argues that its liability is limited to its negligence and insurance coverage. The 2002 Wilson Park Agreement assigned the risk of loss to Plaintiff, "other than risk of loss or damage to Goods caused by Frick's negligence and limited to the extent of Frick's insurance." Wilson Park Agreement ¶ 5. Defendant represents that "[t]here was no insurance coverage due to employee theft." Def.'s Resp. 8. Accordingly, Defendant argues that there is at least a genuine

dispute of material fact whether its liability is limited under the Wilson Park Agreement.

Defendant's argument is without merit. Defendant terminated the Wilson Park Agreement by notice in June 2006, before Plaintiff and Defendant agreed to store the Product at the Tatamy Warehouse. See Robison Dep. 37:6-16 (explaining that June 2, 2006, letter terminated storage arrangements at Wilson Park). After termination of the Wilson Park Agreement, Plaintiff and Defendant entered into a new bailment contract, with different terms, for storage at the Tatamy Warehouse.[7] Moreover, the assignment-of-risk provision in the Wilson Park Agreement provides that Plaintiff would indemnify Defendant and Wilson Park Ltd. But there is no evidence of record indicating that Wilson Park Ltd. had anything to do with storage at the Tatamy Warehouse. Therefore, the Wilson Park Agreement was terminated and not binding on Plaintiff or Defendant with regard to storage of the Product at the Tatamy Warehouse.[8]

---

[7]     Although the parties did not memorialize the terms of the bailment contract for storage at the Tatamy Warehouse in a written agreement, the terms of the Tatamy Warehouse agreement are, nevertheless, significantly different from the terms of the Wilson Park Agreement. Namely, the Tatamy Warehouse agreement concerned storage at a different location, and Plaintiff could only access its storage area when accompanied by an agent of Defendant. See Jerry Fishman Dep. 31:9-23.

[8]     Defendant further argues that the parties' course of dealings is "best memorialized" in the Wilson Park Agreement because the parties did not execute a written agreement for

V.    **GIST OF THE ACTION**

In responding to Plaintiff's Motion for Summary Judgment on Liability, Defendant argues that Pennsylvania's gist-of-the-action doctrine bars liability with regard to Plaintiff's negligence claims. The gist-of-the-action doctrine "preclude[s] a plaintiff from re-casting ordinary breach of

---

storage at the Tatamy Warehouse. Def.'s Resp. 8. Defendant does not provide any legal support for the proposition that a parties' terminated bailment contract is revived merely because the parties later enter a new bailment contract, albeit unwritten, with different terms. Thus, Defendant contends that the parties' course of dealings indicates that they agreed Defendant would escape liability while its agents plundered Plaintiff's personalty under bailment. This is not a reasonable interpretation of the parties' conduct.

Nor would such an interpretation be consistent with Pennsylvania law. A warehouse, in certain circumstances, may contractually limit its liability:

> Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage beyond which the warehouse is not liable. Such a limitation is not effective with respect to the warehouse's liability for conversion to its own use.

13 Pa. Cons. Stat. Ann. § 7204(b) (West 2012) (emphasis added). Defendant's agent converted the Product. See McKeeman v. Corestates Bank, 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000) ("Conversion is defined under Pennsylvania law as: the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."). Pennsylvania law is clear that a bailee cannot escape liability when its agent steals personalty under bailment. Defendant cannot hide behind a liability-limitation provision after its agent converted certain personalty. Such a limitation of liability is not effective in Pennsylvania. See 13 Pa. Cons. Stat. Ann. § 7204(b).

16

contract claims into tort claims." Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. Ct. 2005). "'[A] claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Id. (quoting Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 582 (Pa. Super. Ct. 2003)). Generally, the gist-of-the-action doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

Id. (quoting eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002)).

        Plaintiff admits that it claims Defendant breached the bailment contract, that it seeks contractual damages for the value of the stolen Product, and that its claim for breach of the bailment contract is premised on a negligence standard. Pl.'s Reply 7, ECF No. 19. Furthermore, in its memorandum in support of its Motion for Summary Judgment on Liability, Plaintiff argues that it is entitled to summary judgment on liability for breach of the bailment contract and does not discuss liability for the remaining counts of negligent hiring, supervision, and retention, or negligent notification.

Although liability for breach of a bailment contract is premised on tort principles, <u>Am. Enka Co.</u>, 686 F.2d at 1053, the gist of the action is for breach of a bailment contract. Plaintiff seeks contractual damages and has not argued that Defendant is liable, independent of its claim for breach of the bailment contract, in tort. Plaintiff's claims arise solely from the bailment contract, and Defendant breached duties grounded in the bailment contract itself. Therefore, the Court will grant Plaintiff's Motion and enter judgment in favor of Plaintiff only with respect to Plaintiff's claim for breach of the bailment contract (Count I). The court will deny Plaintiff's Motion with respect to the remaining negligence claims (Counts II and III).

## VI.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's Motion for Summary Judgment on Liability. The Court will grant the Motion with respect to Count I and enter judgment in favor of Plaintiff and against Defendant on the issue of liability for breach of the bailment contract for storage of goods at the Tatamy Warehouse. The Court will deny the Motion with respect to Counts II and III. An appropriate order will follow.