# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE FISHMAN ORGANIZATION, INC. | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 11-cv-04598 |
| | : | |
| FRICK TRANSFER, INC. | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                                                    April 17, 2013
UNITED STATES MAGISTRATE JUDGE

On December 6, 2012, the Court presided over a non-jury damages trial to determine the appropriate sum to compensate plaintiff, The Fishman Organization, Inc. ("Plaintiff" or "Fishman"), for the harm it suffered as a result of the breach of a bailment contract it had entered into with the defendant, Frick Transfer, Inc. ("Defendant" or "Frick"). The trial was limited to determining the damages given the July 24, 2012 order of Eduardo C. Robreno, D.J. which granted summary judgment in favor of Fishman on its breach of bailment contract claim. (*See* Docs. 20 and 21.) Pursuant to the agreement of the parties, we proceeded only on that claim and on Frick's counterclaim for breach of contract against Fishman with respect to unpaid rent. (*See* Tr. at 3:6-20.) We were advised that Counts II and III, the negligence claims, were or would be dismissed.[1] Following the trial, the parties requested an opportunity to file Proposed Findings of Fact and Conclusions of Law once the transcripts were ready. We granted that request. (Doc. 42). The record having been

---

[1] We observe that the docket does not reflect that these counts have formally been dismissed. We will dispose of those counts in our Order accompanying this Memorandum Opinion.

prepared, and the parties' submissions having been filed and duly considered, the matter is now ripe for a ruling. Based upon our review of the testimony offered at trial, the parties' submissions, and for the reasons articulated below, the Court awards Fishman $161,994.24 in damages plus prejudgment interest at the rate of 6% per annum less the credits due to Frick in the amount of $47,347.20 for Fishman's unpaid rent[2] and $2,200 for the restitution paid to date by Daniel Lewandowski.

I. **FINDINGS OF FACT**[3]

Given that we write only for the parties and that our concern is damages only, we dispense with much of the background which is well known to the parties and not now in any real dispute. We know that Fishman had stored a substantial quantity of product, Aqua Di Gio Man EDT Spray 100ml (the "Product"), with Frick at Frick's warehouse at 1326 Tatamy Road, Easton, Pennsylvania ("Tatamy"). (AFF ¶¶2,3,6.) We also know that the Product was stolen and that the thief has been identified and criminally prosecuted. (AFF ¶¶ 10,12.) As we consider the extent of the Fishman's loss, we assess the factors which go to the core of the damage question – namely quantification or count and pricing. We then discuss the questions raised with respect to credits and prejudgment interest.

---

[2] We additionally determine that Frick is likewise entitled to prejudgment interest on the credit for unpaid rent.

[3] Throughout this opinion we make reference to the exhibits provided by the parties and to our own findings of fact and conclusions of law. Plaintiff and defendant each submitted "Proposed Findings of Fact and Conclusions of Law" prior to trial. (Docs. 36, 37.) Following upon the conclusion of trial and the receipt by all parties of the transcript, Fishman and Frick submitted a "Statement of Agreed Findings of Fact" (Doc. 45) and each submitted further "Proposed Findings of Fact and Conclusions of Law." (Docs. 46, 47.) When we refer to either of the parties' proposed findings of fact or conclusions of law, we are referring to the later submissions. (Docs. 46, 47.) For ease of reference, we will cite the "Statement of Agreed Findings of Fact as "AFF," "Plaintiff's Proposed Findings of Fact and Conclusions of Law" as "P-PFF" or "P-PCL," and "Defendant's Proposed Findings of Fact and Conclusions of Law" as "D-PFF" or D-PCL."

### A. The Count

On July 29, 2004, plaintiff purchased 240 cartons of the Product from a Spanish distributor. (AFF ¶2.) The purchase price in U.S. dollars was $164,045.42. *Id*. In addition, plaintiff paid $1,996.58 in freight charges, $549.68 for customs processing and $500.00 for a customs bond for a total of $167,091.68. *Id.* The Product was delivered to a Frick warehouse on 24th Street (Wilson Park) in Easton. (AFF ¶2.) The record is clear and we find as a fact that there were delivered to that warehouse 5760 units, gathered into 240 cartons of 24 units each. In September 2006, Frick moved all then existing Fishman inventory, including the Product to a new location on Tatamy Road, also in Easton. Fishman continues to store goods there "to the present time." (AFF ¶4.)

In the last part of August 2006, in connection with the anticipated move, Mrs. Fishman, the company's President took an inventory of the Product. (*See* AFF ¶6; Tr. at 26:15-27:17.) She offered testimony supported by inventory documents, that there were 5,688 units of the Product at Wilson Park at that time and that all of it was moved to the Tatamy facility. (Tr. at 68:6.) We accept this as credible and also accept her testimony that the shortfall of 72 units from the July 29, 2004 delivery was accounted for by Fishman using some of the product as samples in their marketing efforts. (Tr. at 90:11-19.)

Prior to the discovery of the theft in September 2010, however, Fishman never provided Frick with this or any other specific inventory, description or statement of either the quantity or the value of the Product, regardless of whether it was stored at either Wilson Park or Tatamy Road. (AFF ¶16, 17.) It is also the case that Frick never asked Fishman to provide any such inventory, description or statement of value of any of these stored goods.

3

*Id.*

On September 23, 2010, Ms. Fishman visited the Tatamy location and discovered that the Product was missing. (Tr. 71:12-72:2.) What was unknown to her at the time was that on or about May 2010, Steven Lewandowski, the brother of Frick employee, Daniel Lewandowski ("Daniel"), had called Frick and told them that Daniel was selling some of the Product on eBay and on the boardwalk. (AFF ¶ 9.) After some delay, the local police undertook an investigation which led to criminal charges brought by the Northampton County District Attorney against Daniel for receiving stolen property. (AFF ¶12.) In working up the charges the investigating detective traced some 140 cases, of 24 count each, as having been sold by Daniel on eBay. (AFF ¶14.) While there was credible evidence of Daniel being responsible for the theft of the entire lot, the District Attorney took a more conservative approach and charged him not with theft, but with receiving stolen property for the quantity established by the eBay records or 3,360 individual pieces. (*See* Tr. at 53:9-56:12.) Frick urges us to conclude that this represents the entirety of the Product stolen. This we decline to do.

We are rather, convinced by the un-contradicted evidence that none of the Product was removed by or at the direction of Fishman once it got to Tatamy in August-September 2006. (Tr. at 74:6-7; 75:15-76:10.) We are also persuaded by the police investigation, which disclosed that the further disposition of the Product by Daniel was not limited to eBay sales. (Tr. at 50:9-52:11.) Some of it had been given to family and friends as Christmas gifts and some had been sold on the boardwalk. *Id.* Further, Daniel himself testified in his deposition, relevant portions of which were accepted as trial evidence, that between June

4

2007 and September 2009 he systematically stole carton after carton of the Product until there was none left. (P-PFF ¶ 4; Tr. at 107:19-108:8.) Thus, we conclude from this evidence that 5,688 units of Fishman's Product were stolen from the Frick Tatamy warehouse. We now turn to the question of pricing.

B. Pricing

The evidence offered with respect to pricing has some limitations. Plaintiffs argue that the proper valuation of the Product is $290,088, based upon a price they expected to get from a customer in the Philippines. (P-PCL ¶ 6.) Defendant, on the other hand, urges us to value the Product based upon plaintiff's $164,045.42 purchase price. (D-PFF ¶ 8.) We will consider both positions.

Fishman claims that it is entitled to lost profits as they introduced evidence that showed that they would have sold the Product to a third party at a price of $51 per piece or $290,088. (P-PCL ¶6.) At trial, Jerry Fishman testified that he anticipated receiving $51 per bottle for the Product from one interested customer in the Philippines. (Tr. at 22:11; 31:2-7.) Upon cross examination, however, Mr. Fishman conceded that he had no documentation or other supporting evidence confirming that such negotiations were in fact under way. (Tr. at 39:18-20.) Further, the evidence established that despite the fact that the Product was said to be the best-selling men's cologne in the world (Tr. at 71:9-11), none of it had been sold (except by the thief) from the time it was delivered to the first Frick warehouse in the fall of 2004 until Diane Fishman's discovery of the thefts in September 2009. (*See* Tr. at 31:8-23.)

Frick maintains that "Fishman's claim for damages in the amount of $290,088 is

5

without factual support in the record [and] is speculative at best." (D-PCL ¶13.) It argues, rather, that the Product should be valued according to Fishman's "demonstrated purchased [sic] cost at [the] time of delivery. . ." (D-PCL ¶ 8.) At trial, documents were accepted into evidence which established that Fishman paid 135,360 euros, or $164,045.42 U.S. dollars, for 5,760 units of the Product from the Spanish supplier in June 2004. (AFF ¶2; P-1 at 1.) As Detective Taylor testified, this led to a simple calculation of dividing that sum by the number of units to establish a price per bottle of $28.48. (Tr. at 53:15-25.)

In considering these positions, we first set out the law pertaining to lost profits. Both parties agree that Pennsylvania law governs, as "[t]he measure of damages for breach of a contract is determined by the law of the place of performance," and the place of performance of the contract in dispute was Pennsylvania. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) (citing Restatement, Conflict of Laws § 372); (Tr. 112:1-9). Pennsylvania law "distinguishes between general damages – those ordinary damages that flow directly from the breach; and special or consequential damages – those collateral losses, such as expenses incurred or gains prevented which result from the breach." *LBL Skysystems (USA), Inc. v. APG–America, Inc.,* 319 F.Supp.2d 515, 523 (E.D. Pa. 2004) (quoting *McDermott v. Party City Corp.,* 11 F.Supp.2d 612, 624 (E.D. Pa. 1998)) (internal quotations omitted); *see also Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1258 (Pa. Super. 1983). Lost profits are considered a form of consequential damages. *In re Partners Group Fin., LLC*, 394 B.R. 68, 80 (Bankr. E.D. Pa. 2008). To recover damages for lost profits in a breach of contract action, the plaintiff bears the burden of establishing that such damages (1) are calculable with reasonable certainty; (2) were proximately caused

by the breach of contract; and (3) were reasonably foreseeable. *Id.* (citing *Company Image Knitware, Ltd. v. Mothers Work, Inc.*, 909 A.2d 324, 336 (Pa. Super. 2006)).

While we appreciate the testimony provided by Fishman that it was holding on to the product such as to allow its sale to a prospective customer to be an enticement for the customer to purchase some lower margin goods (Tr. at 74:1-5), we cannot ignore the fact that they are able to offer essentially no supporting evidence that the prospective $51 per unit sale of the entire lot would in fact materialize. Moreover, plaintiff has failed to provide any evidence with respect to any costs that would have been associated with the prospective sale. We would expect that the sale of the Product to an international purchaser would entail some expense on the part of Fishman. We are left to conclude that even if we accept, which we do, that Mr. Fishman had a prospective customer at the $51 per unit price, this fact standing alone fails to establish a loss of profits with "reasonable certainty." *See In re Partners Group Fin., LLC*, 394 B.R. at 80.

In addition, we question whether plaintiff has established that a loss based upon a loss of profits approach was reasonably foreseeable by Frick. As the record established without contradiction, no questions about the specifics of this product were ever asked by Frick, and no such information was ever provided to Frick by Fishman. (AFF ¶¶16,17.) We find that these were goods of unremarkable and routine value, stored at what was expected to be a reasonably secure warehouse facility. The evidence made clear that none of these goods had been sold by Fishman during the entire time they were stored at either of Frick's warehouses. We conclude as a matter of law that plaintiff has failed to establish that its loss of profits was foreseeable to defendants. As Fishman has neither established the

7

loss of profits with reasonable certainty nor demonstrated that the loss was foreseeable to Frick, we are unable to award damages based upon their asserted prospective sale price of $51 per unit.

We conclude, rather, that the evidence best supports the approach advanced by the defendant. As we are obligated to award damages that are "reasonably certain," a value of $28.48 per unit is best supported by the evidence of record. *See Gordon v. Trovato*, 338 A.2d 653, 657 (Pa. Super. 1975) ("[t]he law requires not merely conjecture, but rather sufficient data from which the damages can be assessed with reasonable certainty"). Accordingly, we find that Plaintiff is entitled to damages based upon a price of $28.48 per unit for a total of 5,688 units, or $161,994.24.

### C. Credits

We next turn to the two issues regarding credits which the parties contend they are entitled to regarding rent and Daniel Lewandowski's restitution. First, we will consider the parties' positions with respect to credits for paid and unpaid rent. Fishman maintains that it is entitled to a credit for the rent it paid from June of 2007 through September of 2009 in the amount of $48,568.80 as Fishman claims that Frick breached its bailment contract. (P-PFF ¶8.) Frick disputes this, as it notes that Fishman "continued to utilize all of its designated fenced secure space at Frick's Tatamy facility." (D-PCL ¶15.) Frick, on the other hand, claims that it is entitled to $47,374.20, for Fishman's unpaid rent from the period of October 2010 through December of 2012. (D-PCL ¶17.) Frick further argues that it is entitled to a credit for any payments made by Daniel Lewandowski and entitled to any future payments made towards his restitution. (D-PCL ¶14.)

8

In considering the appropriate measure of damages to which Fishman is entitled, we note that it is well settled that "[i]n a breach of contract action, damages are awarded to compensate the injured party for loss suffered due to the breach [and t]he purpose of damages is to put the plaintiff in the position he or she would have been in but for the breach." *Empire Properties, Inc. v. Equireal, Inc.*, 674 A.2d 297, 304 (Pa. Super. 1996) (citing *Maxwell v. Schaefer*, 112 A.2d 69, 73 (Pa. 1955); *Harman v. Chambers*, 57 A.2d 842, 845 (Pa. 1948)). We decline to accept plaintiffs' argument that they are entitled to the cost of the product as well as a reimbursement for the amount of rent paid. To grant such relief would not serve to put Fishman in the same place it would have been had no breach occurred, but would actually put them in a *better* position. If the breach had not occurred, plaintiff would have still had (or possibly sold) the Product and would have paid Frick the sum of rent due for rental of the warehouse space. Thus, we find that the correct measure of damages is the value of the Product, which we determined to be $161,994.24 and that plaintiff is not entitled to a reimbursement for the rent paid.

As to Frick's counterclaim, it is undisputed by the parties that Frick is entitled to a credit for Fishman's unpaid rent from October of 2010 through December of 2012. (P-PC: ¶ 9.) Fishman has not paid rent from October of 2010 through December of 2012. (AFF ¶ 19.) Fishman had paid rent in the amount of $1,734.60 per month from June of 2007 through September of 2009. (AFF ¶ 18.) Both parties agree that the amount billed during the period in which Fishman has not paid is $47,347.20. (AFF ¶ 19.) Accordingly, we find that Frick is entitled to a credit in the amount of $47,347.20 for Fishman's unpaid rent

9

from October of 2010 through December of 2012.[4]

We next turn to the issue of Mr. Lewandowski's court ordered restitution. As part of his sentence following his guilty plea, Mr. Lewandowski was ordered to pay $100 per week to Fishman until he paid the sum of $95,936.30. (AFF ¶ 13.) Diane and Jerry Fishman have testified that if Frick paid Fishman for its losses, it would be entitled to a credit for the restitution paid by Lewandowski. (Tr. at 84:23-85:8.) Diane Fishman testified that to date, they have received approximately $2,200 from Lewandowski. (Tr. at 82:22.) Accordingly, we find that $2,200 shall be deducted from the amount owed to Fishman by Frick. Additionally, we will order that all future payments from Lewandowski be forwarded to Frick.

### D. Prejudgment Interest

Plaintiff maintains that it is entitled to interest "at the rate of six percent per annum from June 2009, until the present." (P-PCL ¶11.) Frick contends that it is entitled to interest at the rate of six percent per annum from October 2010 up to and including December 2012, on Fishman's unpaid rent in the amount of $47,347.20. (D-PCL ¶17.)

Under Pennsylvania law, the "right to interest upon money owing upon a contract is a legal right." *Fernandez v. Levin*, 548 A.2d 1191, 1193 (Pa. 1988) (citing *West Republic Mining Co. v. Jones & Laughlins*, 108 Pa. 55 (1884)). The right to such interest begins at the time the payment is withheld after it has been the duty of the debtor to make such

---

[4] Frick has claimed it is entitled to a credit for the specific time period of October 2010 through December 2012. (D-PCL ¶16.) We observe, however, that December 2012 was likely designated as an end date as the trial was scheduled for that month. To the extent that Fishman has continued to utilize its storage space at Frick's Tatamy Warehouse without providing the proper amount of compensation to Frick, we conclude that Frick shall be entitled to a further credit.

payment, or from the date that the cause of action arose. *See Fernandez*, 548 A.2d at 1193; *Palmgreen v. Palmer's Garage, Inc.* 117 A.2d 721, 722 (Pa. 1955) (from the time payment is withheld); *American Enka Co. v. Wicaco Machine Corp*, 686 F.2d 1050, 1057 (3d Cir. 1982) (from date cause of action arose). Further, "if the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract. . . where the defendant commits a breach of contract to pay a definite sum of money…" *Fernandez*, 548 A.2d at 1193 (citing *Restatement (Second) of Contracts* § 354). The legal rate of interest in Pennsylvania is six percent per annum. 41 P.S. § 202.

We find that Fishman is entitled to prejudgment simple interest at the rate of 6% per annum from the date the cause of action accrued. In that the parties' submissions do not provide adequate discussions with respect to the date from which Fishman is entitled to prejudgment interest, we direct the parties to meet and attempt to resolve this issue without further court intervention, as set out in our accompanying Judgment Order. If they are unable to come to a resolution on this matter, further briefing will be ordered.

We likewise determine that Frick is entitled to prejudgment interest at the rate of 6% per annum to the extent applicable for any loss in the time value of money for Fishman's unpaid rent. The parties' submissions are likewise silent on the matter of the appropriate method for calculating Frick's prejudgment interest, in that the past due rent would have been received incrementally at different points in time rather than in one lump sum on a date certain. As we set out in our Order, the parties are to meet and to attempt to resolve the issue with respect to the calculation of such interest without further court intervention. If the parties are unable to resolve this issue in accordance with our Order, further briefing will

be ordered.

**II.     CONCLUSIONS OF LAW**

Given our analysis and findings of fact set out above, we make the following conclusions of law:

1.     We conclude as a matter of law that Fishman is entitled to damages in the amount of $161,994.24 based upon the findings that 5,688 units of its Product were stolen from defendant's warehouse and that the value per unit was $28.48.

2.     We conclude as a matter of law that Fishman is entitled to prejudgment interest at the rate of 6% per annum.   The parties shall meet and confer to determine the date from which Fishman is entitled to such interest.

3.     We conclude as a matter of law that Fishman is not entitled to damages for reimbursement of rent paid to Frick.

4.     We conclude as a matter of law that Frick is entitled to a credit in the amount of $47,347.20 for unpaid rent through December of 2012.   Further, we conclude that to the extent that Fishman continues to utilize storage space in Frick's warehouse without providing proper compensation, Frick is entitled to a further credit in the amount of $1,734.60 per month.

5.     We conclude as a matter of law that Frick is entitled to prejudgment interest at the rate of 6% per annum for Fishman's unpaid rent.   The parties shall meet and confer within thirty days to resolve the issue of the calculation of this interest.

6.     We conclude as a matter of law that Frick is entitled to a credit for the $2,200 paid by Daniel Lewandowski in compliance with his court ordered restitution and is entitled

to any further payments made in satisfaction of that order.

An appropriate Order follows.

**BY THE COURT:**

**/s/ David R. Strawbridge**
**David R. Strawbridge**
**United States Magistrate Judge**